This suit was begun in the equity division of Jefferson County Circuit Court as a declaratory judgment action which also sought affirmative relief in the form of an order to compel the Jefferson County Engineer to issue a building permit to plaintiffs. The complaint and proof at trial showed that plaintiffs James and Betty Johnson owned two lots in Shades Creek Parkway Estates, a subdivision in Jefferson County; that they had previously built a commercial building called the Johnson Building on the property; and that they were seeking a building permit to add an addition to the presently existing building. The evidence further showed that plaintiff James Johnson and his attorney, Charles Beavers, who is now deceased, discussed the proposed addition with defendant Hewitt A. Snow, the Jefferson County Engineer and Building Official, prior to taking any official action to acquire a permit. Snow, who is the county officer authorized to issue building permits, informed plaintiff that the proposed plans, which called for the placement of sixteen concrete support pillars in the area of the creek bed and the construction of the addition over the creek, were unacceptable because the pillars would interfere with maintenance of the creek bed, would cause blockage problems in that debris would be trapped on the pillars, and would preclude *Page 145 
the enlarging of the creek bed in the future to prevent flooding. There was dispute at the trial as to whether an application for a permit was officially submitted to the County Engineer prior to initiation of this suit.
Subsequent to the filing of the suit, the trial court ordered plaintiffs to submit a partial permit application for the sole purpose of determining whether the County Engineer would deny the permit because of the proposed location of the addition. The defendant County Engineer did deny the permit in a letter which read in pertinent part:
 "* * * [I]n our opinion, which is based on flood experience in this area, it would be very unwise to construct any new facility which would tend to impede the flow of water within this creek or preclude the possibility of enlarging the creek channel to provide for future increases in run-off and make it difficult to clean the channel of silt and debris."
* * * * * *
 "Therefore your application for a permit, on the plans submitted, for construction of a building over the confines of the creek area is denied."
In the letter and also in a counter-claim included in defendant's answer to the complaint, defendant Jefferson County asserted a right to a fifty-five foot wide drainage easement on plaintiffs' property which was alleged to include portions of the property upon which the addition was to be built. Subsequent to the filing of defendant's answer, plaintiffs amended their complaint to request a declaration by the court as to the validity of the asserted easement. Although the trial court's later ruling, which found no easement, was assigned as error by appellants it has not been argued on this appeal. Thus this issue is not before this court.
The case was tried to the court with at least one expert testifying to the effect that the construction would not contribute to flood conditions in and around the creek. In its final judgment the court found: (1) that the plaintiffs were not precluded from bringing this action by the doctrine of exhaustion of administrative remedies because they did not have adequate remedies to pursue; (2) that the denial of the building permit by the defendants did not involve zoning regulations nor did such denial stem from any regulation, method or mode of construction found in the applicable Jefferson County Building Code or adopted standards; (3) that the denial was based solely on the reasons specifically set forth in the letter of denial addressed to plaintiff James T. Johnson by defendant Hewitt A. Snow and that these reasons were not supported by the evidence and were not well taken; (4) that the plaintiffs had made a proper application for the building permit and (5) that the proposed location would not significantly impede the flow of Shades Creek or increase the likelihood of flooding in the area. The court then ordered the county to issue the building permit as soon as final plans meeting all technical building code requirements had been submitted.
This court interprets the trial judge's final decree as holding that the Jefferson County Engineer had no legal authority to deny a building permit for the reasons set out in the letter addressed to plaintiff James T. Johnson. Therefore the issue presented to the court is whether this conclusion of the trial court is correct as a matter of law.
It is a well established proposition of law that, as a political subdivision of the state, a county can exercise only that authority conferred on it by law. Alexander v. State,274 Ala. 441, 443, 150 So.2d 204, 206 (1962); Trailways Oil Co. v.City of Mobile, 271 Ala. 218, 222, 122 So.2d 757, 760 (1960). Therefore, in order to take action on the subject of flood control, the county must be so authorized by the legislature.
Appellants contend that there was ample legal authority for the denial of the building *Page 146 
permit. The primary authority, they argue, is the Building Code of Jefferson County, adopted in 1970, under the authority of an act passed by the Alabama legislature in 1967, codified in the Appendix, § 1059 (14 aaa)-14ddd), Code of Alabama 1940 (Recompiled (1958)). This statute provides that counties with populations greater than 600,000 may adopt a building code which is not less restrictive than the Southern Building Code. The pertinent parts of the Jefferson County Building Code as set out by appellants are these:
(1) Section 101.2 — Code Remedial
 "This code is hereby declared to be remedial, and shall be construed to secure the beneficial interests and purposes thereof — which are public safety, health, and general welfare — through structural strength, stability, sanitation, adequate light and ventilation, and safety to life and property from fire and other hazards incident to the construction, alteration, repair, removal, demolition, use and occupancy of buildings, structures, or premises."
(2) Section 101.3 — Scope
 "(a) The provisions of this code shall apply in all unincorporated areas of Jefferson County and also in those parts of said County lying within the corporate limits of municipalities which have not adopted and are not enforcing municipal building codes, to the construction, alteration, repair, equipment, use and occupancy, location, maintenance removal and demolition of every building or structure or any appurtenances connected or attached to such building or structures."
 (3) Section 106.1 — Action on [Building Permit] Application
 "(a) No person, firm or corporation shall erect, construct, enlarge, alter, repair, move, improve, remove, convert or demolish any building or structure in any area described in Section 101.3 (a), or cause the same to be done, without first obtaining a separate building permit for such building or structures from the Building Official.
 "(b) If the Building Official is satisfied that the work described in an application for permit and the drawings filed therewith conform to the requirements of this code and other pertinent laws and ordinances, he shall issue a permit therefor to the applicant.
 "(c) If the application for a permit and the drawings filed therewith describe work which does not conform to the requirements of this code or other pertinent laws or ordinances, the Building Official shall not issue a permit, but shall return the drawings to the applicant with his refusal to issue such permit. Such refusal shall, when requested, be in writing and shall contain the reasons therefor." (4) Section 112.1 — Time Limit
 "(a) Whenever the Building Official shall reject or refuse to approve the mode or manner of construction proposed to be followed or materials to be used in the erection or alteration of a building or structure, or when it is claimed that the provisions of this code do not apply, or that an equally good or more desirable form of construction can be employed in any specific case, or when it is claimed that the true intent and meaning of this code or any of the regulations thereunder have been misconstrued or wrongly interpreted, the owner of such building or structure, or his duly authorized agent, may appeal from the decision of the Building Official to the Board of Adjustments and Appeals. Notice of appeal shall be in writing and filed within 30 days after the decision is rendered by the Building Official. A fee of $10.00 shall accompany such notice of appeal."
The Board of Adjustments and Appeals is created by section 111 of the Building Code. Section 113 authorizes the Board of *Page 147 
Adjustments and Appeals to vary the application of the code provisions so as to prevent manifest injustice.
Appellants further contend that Title 12, Sections 341-364 of the Code, which is entitled "Comprehensive Land Management and Use Program in Flood-Prone Areas," empowers Jefferson County to adopt ordinances, regulations and building codes for flood-prone areas. Section 344 of the act reads in pertinent part:
 "Land-use and control measures shall provide land-use restrictions based on probable exposure to flooding. Measures provided in this section shall:
 (a) Prohibit inappropriate new construction or substantial improvements in the flood-prone areas;
 (b) Control land uses and elevations of all new construction within the flood-prone area;
* * * * * *
 (d) Be based on competent evaluation of the flood hazard as revealed by current authoritative flood-prone information;
 (e) Be consistent with existing flood-prone management programs affecting adjacent areas and applicable to appropriate state standards; and
 (f) Prescribe such additional standards as may be necessary to comply with federal requirements for making flood insurance coverage under the National Flood Insurance Act of 1968 available in this state."
Section 345 provides:
 "In addition to land-use restrictions commensurate with the degree of the flood hazards in various parts of the area, there shall be such subdivision regulations as may be necessary:
 (a) To prevent the inappropriate development of flood-prone lands;
* * * * * *
 "(c) To provide for adequate drainage so as to minimize exposure to flood hazards and to prevent the aggravation of flood hazards; and
 "(d) To require such minimum elevation of all new developments as required."
Appellants also point to a resolution passed by the Jefferson County Commission on March 5, 1974, as further authority for the action of the County Engineer. This resolution charges the County Engineer as follows:
 "1. That the (Urban Engineer-Inspection Services) shall review all building permit applications for new construction or substantial improvements to determine whether proposed building sites will be reasonably safe from flooding. If a proposed building site is in a location that has a flood hazard, any proposed new construction or substantial improvement (including prefabricated and mobile homes) must (i) be designed (or modified) and anchored to prevent flotation, collapse, or lateral movement of the structure, (ii) use construction materials and utility equipment that are resistant to flood damage, and (iii) use construction methods and practices that will minimize flood damage; and
 "2. That the (Public Works Director-County Engineer) shall review subdivision proposal and other proposed new developments to assure that (i) all such proposals are consistent with the need to minimize flood damage, (ii) all public utilities and facilities, such as sewer, gas, electrical, and water systems are located, elevated, and constructed to minimize or eliminate flood damage, and (iii) adequate drainage is provided so as to reduce exposure to flood hazards; and
 "3. That the (Public Works Director-County Engineer) shall require new or replacement water supply systems and/or sanitary sewage systems to be designed to minimize or eliminate infiltration of flood waters into the systems and *Page 148 
discharges from the systems into flood waters, and require on-sight waste disposal systems to be located so as to avoid impairment of them or contamination from them during flooding."
Appellants maintain that all of these enactments provide the legal authority to support the denial of a building permit to plaintiff by the Jefferson County Engineer. After studying each of the enactments cited by appellant, this court concludes that none of them as presently enacted establish in the County Engineer the authority to deny a building permit for the reasons set out by defendant Snow in the letter of denial.
This court is unable to locate within the Building Code, and neither has there been pointed out to the court, any provision of the Code which deals with protecting streams from construction which might impede the flow of water within the stream, or prevent enlargement of the creek channel or interfere with clearing the channel of silt and debris. While section 101.2 mentions the words "other hazards," nothing contained therein authorizes the County Engineer to take any action concerning flooding. The Building Code is largely directed to what is to be constructed rather than to the consequences that result to lands and streams.
It is contended that the resolution adopted by the County Commission of Jefferson County on March 5, 1974, provides the County Engineer with legal authority to deny the building permit; however, an inspection of the resolution fails to point up such authority. In order to be a valid exercise of county authority the resolution must be found to be within the scope of power conferred on the county by Title 12, Sections 341-64. It is not clear to this court that the resolution complies with the requisites set out in these Code sections. And, even if it were found to comply with the statutory requisites (a question this court need not reach), the provisions of the resolution do not authorize the denial of the building permit before the County Engineer in this case. The first section of the resolution sets out requirements which can be imposed to protect the building itself. See (1)(i)(ii)(iii). This section does not authorize the County Engineer to prohibit the building of a structure. It merely empowers him to require that certain protective measures to the building be taken prior to issuance of a permit. Only the builder's refusal to comply with these provisions would justify denial of a permit.
Appellants argue that section (2) of the resolution gives the Engineer such authority. An inspection of this section, however, reveals that it deals only with the refusal of subdivision proposals and other proposed new developments. In this instance the construction is an addition to an existing building and cannot be classified as a subdivision proposal or other proposed new development.
The third section of the resolution is not applicable since it refers only to water supply systems and sanitary sewer systems.
The appellants contend that the County Engineer had authority under sections 344 and 345 of Title 12 to act as he did. These provisions of the "Comprehensive Land Management and Use Program in Flood-Prone Areas Act" do appear, on first review, to provide sufficient authority to deny the permit. However, further study reveals that the provisions of these sections are not controlling unless the county governing body has adopted or established comprehensive land-use and control measures or building codes for flood-prone areas. In this instance the Jefferson County Commission has not acted pursuant to these requirements. Until such action is taken, the provisions of the act are not binding. Thus this court concludes that the trial court was correct in finding that the authorities presented by appellants do not provide legal justification for the denial of the building permit by the County Engineer. *Page 149 
The court also concludes that the trial judge was under no duty to require that further administrative remedies be pursued prior to granting final equitable relief to plaintiff-appellees. Although appellants argue that the exhaustion of administrative remedies doctrine should be applied in this case, this court finds that the doctrine is not applicable under the exception that holds that administrative remedies are not required to be exhausted where there is a defect in the power of the agency to act in any respect. SeeSimpson v. Van Ryzin, 289 Ala. 22, 32, 265 So.2d 569, 577
(1972); State ex rel. Barbuto v. Ohio Edison Co., 16 Ohio App.2d 55, 45 Ohio Op.2d 159, 241 N.E.2d 783, affirmed 16 Ohio Misc.2d 54, 242 N.E.2d 562 (1968).
Because the Jefferson County Engineer was not authorized to deny a building permit for the reasons stated in his letter of denial to appellee, the findings of the trial court are correct and are hereby affirmed.
AFFIRMED.
MERRILL, MADDOX, FAULKNER and JONES, JJ., concur.