The Alabama Department of Environmental Management ("ADEM"), Westinghouse Government Environmental Services Company LLC ("Westinghouse"), and the United States Department of the Army ("the Army") (hereinafter sometimes collectively referred to as "the ADEM appellants") appeal from an interlocutory *Page 113 
order of the trial court. In its order, the trial court entered a summary judgment in favor of the Coosa River Basin Initiative, Inc. ("CRBI"), finding that, in issuing a permit to incinerate chemical weapons to the Army and to Westinghouse, ADEM had failed to comply with the Alabama Administrative Procedure Act ("AAPA"), § 41-22-1 et seq., Ala. Code 1975. The trial court, however, reserved judgment on what relief, if any, to grant CRBI and certified the order for an interlocutory appeal. See Rule 5, Ala.R.App.P. This Court granted the ADEM appellants permission to appeal.
The issues presented in this appeal are whether the trial court erred in holding that ADEM's inclusion of the cancer-risk screening level of 1 x 10-5 in the permit issued to the Army and Westinghouse constituted a "rule" as that term is defined in the AAPA and, if so, whether the trial court had jurisdiction to hear this dispute. We hold that the trial court had jurisdiction to address the merits of the dispute, and we conclude that the trial court's holding was in error. We reverse and remand with instructions.
 Background
Presently stored at the Anniston Army Depot are 4.5 million pounds of chemical weapons, consisting of various rockets, projectiles and cartridges, land mines, and shell containers. The chemical agents contained in these weapons include the blistering agents HD and HT (known as "mustard gas"), the nerve agent GB (also known as "Sarin"), and the nerve agent VX. Under an international treaty among 120 countries,[1]
the United States Army is required to destroy its entire chemical-weapons stockpile by April 2007. See Pub.L. No. 102-484, 106 Stat. 2315, 2341 (codified at 50 U.S.C. § 1521(b)(5)). In order to complete the destruction of the chemical-weapons stockpile at the Anniston Army Depot, the Army contracted with Westinghouse to construct and jointly operate a chemical-disposal facility in Anniston.
On June 19, 1997, ADEM issued hazardous-waste facility permit number AL3 210 020 027, authorizing the United States Department of the Army, Anniston Army Depot; the United States Department of the Army, program manager for chemical demilitarization; and Westinghouse to incinerate the chemical weapons located at the Anniston Army Depot. One condition to the issuance of the permit is that the Army conduct a human-health-risk assessment, using a written guidance published by the United States Environmental Protection Agency (the "EPA Guidance"). The EPA Guidance, published in 1994, which was the most current guideline when ADEM issued the permit, recommended a cancer-risk screening level of 1 x 10-5.[2]
The permit also required the Army to update this human-health-risk assessment by conducting additional tests at future times using the cancer-risk screening level recommended by the EPA at the *Page 114 
time those tests are administered.[3]
On July 2, 1997, two environmental groups, Families Concerned About Nerve Gas Incineration ("Families") and Serving Alabama's Future Environment, Inc. ("SAFE"), challenged the issuance of the permit by filing an administrative appeal with the Alabama Environmental Management Commission ("the Commission"). The Commission appointed a hearing officer, who presided over a five-week evidentiary hearing (the longest in ADEM's history) and the compilation of a voluminous administrative record. On April 20, 2000, after nearly three years of review, the hearing officer presented the Commission with extensive findings of fact, conclusions of law, and a recommendation that the Commission approve the issuance of the permit, without modification. On June 20, 2000, the Commission adopted the hearing officer's recommendations in their entirety. On July 19, 2000, Families and SAFE appealed the Commission's decision to the Montgomery Circuit Court, alleging, among other things, that the cancer-risk screening level incorporated into the terms and conditions of the permit constituted a legislative "rule," and, therefore, the adoption of the screening level should have been subject to the formal notice-and-comment provisions of § 41-22-5
through -7, Ala. Code 1975. Families and SAFE asserted that, because the screening level was not adopted in compliance with formal rulemaking procedures set out in the AAPA, it is invalid, and, they alleged, voids the issuance of the permit.
Although CRBI was aware of the inclusion in the permit of the 1 x 10-5 cancer-risk screening level, it did not participate in the administrative appeal before the Commission. However, on September 2, 1998, before the completion of the administrative proceeding, CRBI filed a complaint in the Montgomery Circuit Court, seeking a judgment declaring the permit void and enjoining the construction of the chemical-weapons incinerator, pursuant to § 41-22-10, Ala. Code 1975,[4] and pursuant to Title 6, Chapter 6, Article 5, of the Alabama Code 1975.[5]
CRBI alleged, among other things, that ADEM's inclusion of that cancer-risk screening level recommended by the *Page 115 
EPA Guidance constituted the adoption of a "rule" by ADEM in violation of the AAPA. Like Families and SAFE, CRBI asserted that because ADEM had not provided notice and a period for public comment specifically regarding the use of the cancer-risk screening level recommended by the EPA Guidance, the permit had been issued in violation of the AAPA and thus was void. The Montgomery Circuit Court consolidated CRBI's action with the administrative appeal subsequently filed by Families and SAFE.[6]
The Montgomery Circuit Court affirmed the Commission's decision upholding ADEM's issuance of the permit. Thus, the Montgomery Circuit Court affirmed ADEM's issuance of the permit, including the inclusion in the permit of the EPA Guidance recommended cancer-risk screening level, despite the fact that the condition in the permit that a human-health-risk assessment be performed periodically using the cancer-risk screening level had not been subject to formal notice-and-comment rulemaking procedures.[7]
However, in the CRBI action, on cross-motions for a summary judgment, the Montgomery Circuit Court held that the cancer-risk screening level was a "rule" as that term is defined in the AAPA, and, thus, should have been subject to the formal notice-and-comment provisions. Because the trial court found no genuine issues of material fact and determined that CRBI was entitled to a judgment as a matter of law, the trial court entered a summary judgment in favor of CRBI. Thus, although both actions involved identical issues, the trial court reached a conclusion in theCRBI action that contradicted the result reached in the administrative appeal involving Families and SAFE.
However, the trial court refused to grant the injunctive relief CRBI requested — voiding Hazardous Waste Facility Permit number AL3 210 020 027 and enjoining the construction of the Anniston chemical-weapons-incineration facility. The trial court certified its summary-judgment order for interlocutory appeal, and we granted ADEM, the Army, and Westinghouse permission to appeal.
 Standard of Review
This Court previously has recognized:
 "This Court will review a summary judgment de novo, and it will apply the same standard the trial court applied. Bussey v. John Deere Co., 531 So.2d 860
(Ala. 1988). A summary judgment is appropriate when `there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala.R.Civ.P."
Miller v. Jackson Hospital Clinic, 776 So.2d 122, 124 (Ala. 2000).
 Analysis
In the related case of Families Concerned About Nerve Gas Incinerationv. Alabama Department of Environmental Management, 826 So.2d 857
(Ala.Civ.App. 2002), the Court of Civil Appeals addressed the identical issue now presented to this Court for review. InFamilies Concerned About Nerve Gas Incineration, the Court of Civil Appeals held that ADEM's inclusion of the cancer-risk screening level in the permit issued to the Army and Westinghouse did not constitute *Page 116 
the adoption of a "rule" as defined in § 41-22-3(9), Ala. Code 1975, for two reasons. The Court of Civil Appeals stated:
 "First, and most important, we conclude that the cancer-risk standard is not a legislative rule because it does not establish a binding norm under which all future chemical-incineration permits are to be judged. The EPA Guidance from which the 10-5
standard was derived states that the standard cannot be relied on to create enforceable rights, that it is not binding, and that it is subject to change. `The touchstone of a [legislative] rule is that it establishes a binding norm. [However,] [i]f the agency "remains free to consider the individual facts in the various cases that arise, then agency action in question has not established a binding norm."' The record before us establishes that, in calculating the risk to human health or the environment from the incineration of chemical weapons, ADEM has reserved some `free[dom] to consider the individual facts in the various cases that arise.'"
826 So.2d at 869 (citations omitted). The Court of Civil Appeals further stated:
 "The record before us indicates that ADEM does not intend to rigidly enforce the risk-assessment methodology set out in the EPA Guidance. We think that, by requiring the permittees to submit a `risk assessment addendum' at three points in the process — before commencing incineration operations, before the start of a `shakedown' period, and after the first `trial burn' — ADEM has indicated its intent to proceed in a `site-specific manner.'"
826 So.2d at 870.
The Court of Civil Appeals also held that the 1 x 10-5 cancer-risk screening level was not a legislative rule subject to the notice-and-comment provisions of the AAPA for a second reason. The court stated that
 "by definition, [the cancer-risk screening level] cannot — and for safety reasons, should not
— qualify as a statement of `general applicability.' . . . The record indicates that the 10-5 standard is based on cutting-edge scientific knowledge that is continually being updated. . . . Because the scientific and technological basis for assessing the health risks of incineration is subject to change, we think it would be unwise for any health risk assessment to be `generally applicable' and therefore promulgated as a binding `rule.'"
826 So.2d at 870-71.
We find the holding of the Court of Civil Appeals in Families ConcernedAbout Nerve Gas Incineration to be dispositive of the first issue before this Court. That opinion is thoroughly researched and well reasoned, and we adopt that reasoning in its entirety. For the same reasons stated inFamilies Concerned About Nerve Gas Incineration, supra, we conclude that ADEM's inclusion of a cancer-risk screening level in the permit issued to the Army and Westinghouse and ADEM's requirement that the Army and Westinghouse update, at regular intervals and in a site-specific manner, the testing methods and test data necessary to determine the appropriate screening level to be used at the Anniston incineration site did not create a "binding norm under which all future chemical-incineration permits are to be judged." See Families Concerned About Nerve GasIncineration, 826 So.2d at 869. Accordingly, we conclude that ADEM's inclusion of the 1 x 10-5 cancer-risk screening level in the permit issued to the Army and Westinghouse did not constitute the adoption of a "rule," subject to the AAPA's formal notice-and-comment provisions. *Page 117 
Because of our resolution of the first issue, we must address the ADEM appellants' contention that the trial court lacked jurisdiction to hear this matter.
 The Jurisdictional Issue
ADEM, the Army, and Westinghouse ask this Court to dismiss CRBI's claims, asserting that the trial court lacked jurisdiction to hear this dispute. The ADEM appellants assert that CRBI filed this action pursuant to § 41-22-10, Ala. Code 1975, which permits a declaratory-judgment action only in a case involving the "validity or applicability" or the "enforcement" of a "rule." The ADEM appellants further assert that ADEM's director included the cancer-risk screening level in the permit issued to the Army and Westinghouse under his discretionary "omnibus" authority authorized by § 22-30-12(c), Ala. Code 1975, and that the inclusion of such discretionary conditions and terms does not constitute a "rule" subject to review under § 41-22-10. Thus, the ADEM appellants assert that the trial court lacked subject-matter jurisdiction to hear this action.
However, this argument overlooks several important aspects of this case. First, CRBI filed this action seeking relief under § 41-22-10, Ala. Code 1975, and under Title 6, Chapter 6, Article 5, of the Alabama Code 1975 — the Declaratory Judgment Act — which authorizes the trial court to grant declaratory judgments outside the context of the AAPA. Second, as the ADEM appellants aptly note, the inclusion of the cancer-risk screening level was not a "rule" that CRBI could officially challenge under the formal procedures set forth in the AAPA.
If we were to accept the arguments posed by the ADEM appellants and conclude that the trial court lacked jurisdiction over this action, we would, in essence, be holding that the only manner in which CRBI could seek a determination of whether ADEM's including the screening level in the permit constituted a "rule," subject to the formal notice-and-comment provisions of the AAPA, was by way of a challenge before the Commission. However, the Commission had already concluded that ADEM's adoption of that screening level did not constitute a rule. Following the ADEM appellants' arguments even further, because the Commission had already concluded that the cancer-risk screening level did not constitute a "rule," CRBI would still not be entitled to file a declaratory-judgment action under § 41-22-10, or -11, because, the ADEM appellants argue, those statutes authorize the trial court to exercise jurisdiction only over disputes involving "rules." Thus, requiring CRBI to pursue such a challenge before the Commission would be futile and would not provide an adequate remedy. See City of Gadsden v. Entrekin, 387 So.2d 829 (Ala. 1980) (administrative remedies need not be exhausted before bringing suit where doing so would be futile or where the remedies provided are inadequate).
We also reject this narrow interpretation of § 41-22-10 because we do not believe that the Legislature, in adopting the AAPA, intended to so limit declaratory-judgment actions. See Alabama Cellular Service, Inc.v. Sizemore, 565 So.2d 199 (Ala. 1990) (discussing the history of, and the liberal construction to be given to, the AAPA). Likewise, we do not interpret § 22-30-12(c), Ala. Code 1975 (the "omnibus provision"), to grant the director of ADEM such broad discretionary authority that he may include in hazardous-waste permits whatever terms or conditions he deems appropriate and that those terms or conditions would not be subject to a declaratory-judgment action. For these reasons, we find that the trial court properly *Page 118 
exercised jurisdiction over this action under § 41-22-10 and §6-6-222, Ala. Code 1975.
 Conclusion
We conclude that ADEM's inclusion in the hazardous-waste permit issued to the Army and to Westinghouse of the cancer-risk screening level did not constitute the adoption of a rule subject to the AAPA's formal notice-and-comment provisions. We also conclude that the trial court properly exercised subject-matter jurisdiction over this action. We reverse the judgment of the trial court and remand with instructions for the trial court to enter a judgment in favor of ADEM, the Army, and Westinghouse.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Houston, See, Lyons, Brown, Johnstone, Harwood, and Woodall, JJ., concur.
Moore, C.J., concurs in the result.
[1] The Court of Civil Appeals, in a related case, Families ConcernedAbout Nerve Gas Incineration v. Alabama Department of EnvironmentalManagement, 826 So.2d 857 (Ala.Civ.App. 2002), stated that this treaty involved the "United States and 144 other nations." 826 So.2d at 860. However, in the briefs filed with this Court, the parties indicated that only 120 countries ratified the treaty.
[2] According to the record, this cancer-risk screening level means that, in a worst-case scenario, one in 100,000 persons exposed to emissions from the chemical-incineration process, who would not have otherwise developed cancer, may develop cancer as a result of the exposure.
[3] The EPA materials relied upon by ADEM and incorporated by reference into the permit specifically note that the recommended methods of screening, as well as the recommended cancer-risk screening level, are subject to change in the future, as relevant scientific knowledge is developed.
[4] Section 41-22-10, Ala. Code 1975, provides:
 "The validity or applicability of a rule may be determined in an action for a declaratory judgment or its enforcement stayed by injunctive relief in the circuit court of Montgomery County, unless otherwise specifically provided by statute, if the court finds that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. In passing on such rules the court shall declare the rule invalid only if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without substantial compliance with rule-making procedures provided for in this chapter."
[5] Title 6, Chapter 6, Article 5, of the Alabama Code 1975, authorizes a trial court to enter a declaratory judgment as a remedy: "[I]ts purpose is to settle and to afford relief from uncertainty and insecurity with respects to rights, status, and other legal relations and is to be liberally construed and administered." § 6-6-221, Ala. Code 1975.
[6] The trial court apparently "consolidated" CRBI's action and the administrative appeal involving Families and SAFE so that the two related cases could be considered together. The two actions were not assigned a new, consolidated case number but retained their individually assigned case numbers. The trial court ultimately issued separate and conflicting orders in these two actions.
[7] Families and SAFE appealed this decision to the Alabama Court of Civil Appeals, which affirmed the judgment of the trial court. SeeFamilies Concerned About Nerve Gas Incineration v. Alabama Dep't ofEnvironmental Management, 826 So.2d 857 (Ala.Civ.App. 2002). This related case is discussed later in this opinion.