WOODALL, Justice.
 

 The City of Graysville, the City of Graysville Water and Sewer Board, and Doug Brewer, mayor of the City of Grays-ville (hereinafter referred to collectively as “Graysville”), appeal from a summary judgment in favor of Onis “Trey” Glenn III, director of the Alabama Department of Environmental Management (“ADEM”),
 
 [1]
 
 and Construction Management Services, LLC (“CMS”).
 
 [2]
 
 We affirm the trial court’s judgment.
 

 Facts and Procedural History
 

 The parties stipulated to the following facts:
 

 “1. On May 4, 2005, [CMS] filed its application with [ADEM] seeking a permit to construct and operate a landfill within the confines of the City of Adamsville, in the western part of Jefferson County. As is required by statute, this paperwork was filed publicly and was available for inspection during the entirety of the application’s pen-dency.
 

 “2. Over the course of the next two years, multiple public hearings and meetings occurred concerning CMS’s application. The City of Adamsville rezoned the landfill property, publishing public notices and holding public hearings over the course of the rezoning process. ADEM, on two separate occasions, published public notices, had public comment periods and held public hearings regarding CMS’s pending permit application.
 

 “3. As part of the permitting process, the Regional Planning Commission issued a statement with regards to the proposed landfill’s consistency with the regional solid waste needs....
 

 “4. On August 6, 2007, ADEM issued Solid Waste Disposal Permit No. 37-48 giving CMS permission to construct and operate the landfill that is the subject of this lawsuit.
 

 “5. After the issuance of Solid Waste Disposal Permit No. 37-48, no one filed
 
 *928
 
 a Request for Hearing with the Alabama Environmental Management Commission to contest the issuance of the permit.”
 

 When it issued the permit to CMS, ADEM sent Mayor Brewer a letter advising him that an appeal of the permit issuance to the Alabama Environmental Management Commission (“EMC”) could be filed within 30 days of the issuance of the permit. However, as indicated in the stipulated facts, no one requested a hearing before the EMC.
 

 On June 20, 2008, more than 10 months after ADEM had issued the permit for the landfill, Graysville sued ADEM and CMS, alleging that ADEM had violated a statute and its own regulation in issuing the landfill permit to CMS. Graysville later amended its complaint to remove ADEM as a defendant and to add Glenn in his official capacity as director of ADEM. In its complaint, Graysville asked the trial court for a
 

 “determination that the permit for the Flat Top Road Landfill, being violative of state law, is null and void as being outside the statutory authority of ADEM and Onis ‘Trey5 Glenn, III, in his official capacity as Director of ADEM to grant, or, in the alternative, enjoin [CMS] from acting upon and implementing a landfill until such time as it obtains the necessary approvals required by state law.”
 

 (Emphasis omitted.) Graysville also asked the trial court for
 

 “an injunction against Onis ‘Trey5 Glenn, III, in his official capacity as Director of ADEM from violating [ADEM’s] own rules in reference to solid waste landfill regulations, and a determination that any such permits let in violation of the rules of ADEM be declared null and void as violative of Alabama law and due process to the citizens of Alabama, of Graysville, and the customers of the Graysville Water and Sewer Board.”
 

 (Emphasis omitted.)
 

 Glenn and CMS each moved the trial court for a summary judgment, arguing that the trial court should dismiss the claims against them because, they said, Graysville had failed to exhaust its administrative remedies. The trial court granted the motions on that ground and entered a summary judgment in favor of Glenn and CMS. Graysville appealed.
 

 Graysville and CMS jointly moved this Court to substitute Green Mountain Management, LLC, for CMS. Their motion indicated that CMS had transferred its permit for the Flat Top Road Landfill to Green Mountain shortly before Graysville filed its complaint and that, therefore, “Green Mountain is ... the successor in interest to CMS and has acquired all of CMS’s interests relevant to this appeal.” We granted that motion; we address the appeal as being from a summary judgment in favor of Glenn and Green Mountain.
 

 Issue
 

 Graysville raises a single issue on appeal: whether the trial court erred in entering a summary judgment in favor of Glenn and Green Mountain on the basis of Graysville’s failure to exhaust its administrative remedies.
 

 Standard of Review
 

 “The role of this Court in reviewing a summary judgment is well established — we review a summary judgment
 
 de novo,
 
 ‘ “applying] the same standard of review as the trial court applied.” ’
 
 Stokes v. Ferguson,
 
 952 So.2d 355, 357 (Ala.2006) (quoting
 
 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038 (Ala.2004)). ‘In order to grant the [summary-judgment] motion, the court must find
 
 clearly
 
 [1] that there is no genuine issue of material fact
 
 *929
 

 and
 
 [2] that the movant is entitled to a judgment as a matter of law.... The movant bears the burden initially of showing the two prongs of the standard.’
 
 Maharry v. City of Gadsden,
 
 587 So.2d 966, 968 (Ala.1991).”
 

 Horn v. Fadal Machining Ctrs., LLC,
 
 972 So.2d 63, 69 (Ala.2007).
 

 Analysis
 

 Graysville first argues that the trial court erred in disposing of its claims against Glenn and Green Mountain on the basis that Graysville did not exhaust its administrative remedies because, according to Graysville, the claims fall within the exceptions to the exhaustion-of-administrative-remedies doctrine.
 

 “To be sure, Alabama recognizes the doctrine of exhaustion of administrative remedies.
 
 City of Huntsville v. Smartt,
 
 409 So.2d 1353, 1357 (Ala.1982). ‘This doctrine “requires that where a controversy is to be initially determined by an administrative body, the courts will decline relief until those remedies have been explored and, in most instances, exhausted.” ’
 
 Id.
 
 (quoting
 
 Fraternal Order of Police, Strawberry Lodge No. 40 v. Entrekin,
 
 294 Ala. 201, 209, 314 So.2d 663, 670 (1975)).”
 

 Patterson v. Gladwin Corp.,
 
 835 So.2d 137, 141-42 (Ala.2002). There are recognized exceptions to that doctrine, including
 

 “when (1) the question raised is one of interpretation of a statute, (2) the action raises only questions of law and not matters requiring administrative discretion or an administrative finding of fact, (3) the exhaustion of administrative remedies would be futile and/or the available remedy is inadequate, or (4) where there is the threat of irreparable injury.”
 

 Ex parte Lake Forest Prop. Owners’ Ass’n,
 
 603 So.2d 1045, 1046-47 (Ala.1992). This Court has also recognized an exception to the rule “where there is a defect in the power of the agency to act in any respect.”
 
 Jefferson County v. Johnson,
 
 333 So.2d 143, 149 (Ala.1976).
 

 Graysville alleges that ADEM issued the landfill permit to CMS without obtaining the consistency report required by § 22-27-48(b), Ala.Code 1975,
 
 [3]
 
 and without obtaining an adequate hydrological evaluation, as required by Rule 335-13-4-.14, Ala. Admin. Code (ADEM). Graysville argues that determining whether ADEM had the authority to issue the landfill permit without obtaining a consistency report and an adequate hydrological evaluation involves pure questions of law, including whether there was a defect in ADEM’s authority to act. Further, according to Graysville, “ADEM’s compliance with state law and its own rules and regulations is mandatory, and not discretionary.” Graysville’s brief, at 17. Therefore, Graysville argues, it was not required to exhaust its administrative remedies before suing in the Jefferson Circuit Court for declaratory and injunctive relief.
 

 In response, Glenn and Green Mountain argue that Graysville is seeking a “review” of ADEM’s decision to issue the landfill permit, not any interpretation of § 22-27-48(b), and that Graysville has “alleged that ADEM issued the permit in violation of Ala.Code § 22 — 27—48(b), not that ADEM was without power to issue landfill permits.” Green Mountain’s brief, at 27. Therefore, Glenn and Green Mountain argue, the trial court properly disposed of
 
 *930
 
 Graysville’s action based on its failure to exhaust the available administrative remedies. We agree.
 

 Although we have recognized exceptions to the exhaustion-of-administrative-remedies doctrine, “an action for a declaratory judgment was never intended to be used as a substitute for an appeal.”
 
 Howle v. Alabama State Milk Control Bd.,
 
 265 Ala. 189, 192, 90 So.2d 752, 755 (1956). In
 
 Mitchell v. Hammond,
 
 252 Ala. 81, 39 So.2d 582 (1949), this Court addressed the distinction between actions seeking a declaratory judgment interpreting a statute and actions seeking review of an administrative agency’s decision. Mitchell, who was director of the Department of Public Safety, revoked Hammond’s driver’s license for driving while intoxicated. Hammond sought “a declaratory judgment to review the propriety of ... [Mitchell’s] action ... in revoking [Hammond’s] driver’s license on the basis ... that the revocation of the license was unauthorized.” 252 Ala. at 82, 39 So.2d at 583. Section “68, Title 36, Code 1940, [the statute under which Mitchell had purported to act,] ... provide[d] ... that on the
 
 final conviction
 
 of any person of driving a motor vehicle while intoxicated and the transmittal to him by the court of the record of such conviction, the Director of Public Safety shall forthwith revoke the driver’s license of such person.”
 
 Id.
 
 (emphasis added). Hammond alleged that Mitchell was not authorized to revoke his driver’s license because there had been no final conviction. Mitchell filed a demurrer seeking a dismissal of the suit. The trial court overruled the demurrer, and Mitchell appealed.
 

 On appeal, this Court addressed whether a declaratory-judgment action was the proper procedural avenue for the relief Hammond sought. The Court noted a “clear difference” between asking a court to determine “[t]he constitutionality of [a] statute or the authority of [an official] to lawfully act under [the statute]” and asking the court to determine “whether an act of a public official or bureau is supported by evidence as the basis for official action.” 252 Ala. at 83, 39 So.2d at 584. The Court went on to say:
 

 “In the first instance, there is a controversy as to the meaning of what the official has done or ordered, while in the second there is merely a contention that the official acted upon no evidence or improper evidence. In the latter case the question should be determined by the usual method of direct review. In the latter instance the effort is to get the action or judgment of the official reversed, or rescinded, whereas in a proceeding for a declaratory judgment there is no such purpose, but rather an effort to have the official act interpreted.”
 

 Id.
 
 The Court concluded that Hammond’s claim was, “[i]n essence, [an] attempt ... to use the proceeding to review the sufficiency, vel non, of the evidence” supporting Mitchell’s actions, and it held that “[t]he remedy afforded by the Declaratory Judgment Act [was] not available to [Hammond].” 252 Ala. at 82, 39 So.2d at 583. This Court in
 
 Hammond
 
 could not have reached the result it reached without implicitly rejecting the view that the statutory requirement of a final conviction was a condition precedent to the authority of the director to act.
 

 The circumstances in
 
 Hammond
 
 are closely analogous to those presented in this case. Here, as in
 
 Hammond,
 
 there is no “controversy as to the meaning of what the official has done or ordered.” To the extent that Graysville contends that the issuance of a landfill permit is beyond the authority of ADEM, here, as in
 
 Hammond,
 
 the authority of the agency is not subject to serious challenge. See §§ 22-
 
 *931
 
 27-1 to 22-27-27 and §§ 22-22A-1 to 22-22A-15, Ala.Code 1975. Instead, Grays-ville, like Hammond, seeks a “review of the sufficiency, vel non, of the evidence on which has rested official action by a department of state government, acting by and through the director thereof.” 252 Ala. at 82, 39 So.2d at 583. In other words, Graysville, like Hammond, has attempted “to use [a declaratory-judgment action] as in the nature of an appellate review of ... official action,” id, in an effort to get the official action reversed or rescinded. “It was never contemplated that the [Declaratory Judgment Act] could be so employed.”
 
 Id.
 

 As stated in
 
 Hammond:
 
 “[T]he question [whether the official acted upon no evidence or improper evidence] should be determined by the usual method of direct review.” 252 Ala. at 83, 39 So.2d at 584. Thus, if Graysville claimed to be aggrieved by the issuance of the landfill permit, it was required to invoke the appeal procedure available to it under § 22-22A-7(c), Ala. Code 1975. Pursuant to that subsection, “any person aggrieved by an administrative action of [ADEM] shall be entitled to a hearing before the [EMC] or its designated hearing officer.” The issuance of a permit by ADEM is an administrative action. See § 22-22A-3(8), Ala.Code 1975. “Within 30 days after such hearing, the [EMC must] issue an appropriate order modifying, approving or disapproving [ADEM’s] administrative action.” § 22-22A-7(c)(3). Such an order of the EMC “constitutes a final action of [ADEM]” and is appealable to the circuit court. § 22-22A-7(c)(6). ‘When a special statutory procedure has been provided as an exclusive method of review for a particular type case, no other statutory review is available.” How
 
 le,
 
 265 Ala. at 193, 90 So.2d at 755. When Graysville was advised of its right to invoke the statutory-review procedure, it did not do so. Therefore, the trial court correctly concluded that Graysville’s claims were hot viable, based on its failure to exhaust the administrative remedies available to it.
 

 Graysville cites several cases that, according to it, support its contention that a declaratory-judgment action is the proper means of seeking relief in this case. The cases include
 
 Lake Forest, Johnson, Alabama Department of Environmental Management v. Coosa River Basin Initiative, Inc.,
 
 826 So.2d 111 (Ala.2002), and
 
 Pleasure Island Ambulatory Center v. State Health Planning & Development Agency,
 
 38 So.3d 739 (Ala.Civ.App.2008). However, each of these cases is distinguishable.
 

 In
 
 Lake Forest,
 
 this Court concluded that the exhaustion-of-administrative-remedies doctrine was inapplicable because “[t]he resolution of [the] issue [presented] did not require an administrative finding of fact or the exercise of administrative discretion, nor was the issue raised as an appeal from the board of adjustment’s denial of [a] variance.”
 
 Lake Forest,
 
 603 So.2d at 1047. In
 
 Pleasure Island,
 
 the parties sought the interpretation of a statute.
 
 Pleasure Island,
 
 38 So.3d at 745 (“This case concerns the interpretation of a statute and involves only a question of law.”). Thus, the claims in those cases fell within the exceptions to the exhaustion-of-administrative-remedies doctrine. See
 
 Lake Forest,
 
 603 So.2d at 1046-47 (“The doctrine [of exhaustion of administrative remedies] does not apply when (1) the question raised is one of interpretation of a statute, [or] (2) the action raises only questions of law and not matters requiring administrative discretion or an administrative finding of fact.... ”).
 

 Here, Graysville argues that its claims also “involve only the interpretation of a statute and agency rule and raise only
 
 *932
 
 questions of law.” Graysville’s brief, at 14. However, as already discussed, Grays-ville’s claims do not seek the interpretation of a statute but, instead, seek a review of ADEM’s issuance of the permit through an inquiry into the sufficiency of the evidence to support that action in a setting where the alleged deficiency does not defeat the authority of the agency to act. Such an inquiry involves the application of the law to the facts and, as stated previously, is limited to the review provided by statute. Therefore, unlike the claims in
 
 Lake Forest
 
 and
 
 Pleasure Island,
 
 Graysville’s claims do not fall within any exception to the exhaustion-of-administrative-remedies doctrine.
 

 Johnson
 
 is also distinguishable. In
 
 Johnson,
 
 the Jefferson County engineer, by letter, denied the Johnsons’ application for a building permit because it was his “ ‘opinion ... based on flood experience in [the] area’ ” that the proposed structure “ “would tend to impede the flow of water within [a] creek or preclude the possibility of enlarging the creek channel to provide for future increases in run-off and make it difficult to clean the channel of silt and debris.’” 338 So.2d at 145. The issue presented was whether the engineer had the legal authority “to take action on the subject of flood control.”
 
 Id.
 
 The Court held that the engineer had no such authority and, therefore, “was not authorized to deny [the] building permit for the reasons stated in his letter of denial to” the John-sons. 333 So.2d at 149. The Court also concluded that no “further administrative remedies [had to] be pursued,” because “administrative remedies are not required to be exhausted where there is a defect in the power of the agency to act in any respect.” 333 So.2d at 149.
 

 Graysville argues that, “[a]s in ...
 
 Johnson,
 
 in this case [Graysville] claim[s] that the grant of a solid waste permit without a statement of consistency from the regional planning and development board created a defect in the power of the agency to act at all in regard to the issuance of a permit.” Graysville’s brief, at 16. However, it is undisputed that ADEM has the authority to issue permits for the construction of landfills. See §§ 22-27-1 to 22-27-27 and §§ 22-22A-1 to 22-22A-15, Ala.Code 1975. Although Graysville attempts to argue in terms of a defect in ADEM’s authority, its claim, as we noted previously, actually goes to the sufficiency of the evidence to support ADEM’s issuance of the permit to CMS, Green Mountain’s predecessor in interest. A declaratory-judgment action is not the proper procedural avenue to seek relief on a claim that an agency acted on the basis of “no evidence or improper evidence.”
 
 Hammond,
 
 252 Ala. at 83, 39 So.2d at 584.
 

 Coosa River
 
 is also distinguishable. In that case, the Court did decide that a declaratory-judgment action was the proper avenue for relief. However, that case did involve the interpretation of a statute, and the Court held that the pursuit of administrative remedies “would be futile and would not provide an adequate remedy.” 826 So.2d at 117. Thus, the claims in
 
 Coosa River
 
 fell within two of the well recognized exceptions to the exhaustion-of-administrative-remedies doctrine. On the other hand, as we have discussed, Grays-ville’s claims do not fall within these or any other recognized exception. More specifically, Graysville is not asking the court to interpret a statute, and the relief it seeks was within the authority of the EMC to grant pursuant to the administrative review that Graysville did not pursue.
 

 Conclusion
 

 Glenn and Green Mountain demonstrated that there was no genuine issue of material fact as to Graysville’s failure to exhaust its administrative remedies and
 
 *933
 
 that, therefore, they were entitled to a judgment as a matter of law on that basis. Thus, we affirm the trial court’s judgment.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, STUART, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
 

 [1]
 

 . On December 11, 2009, Glenn stepped down as director of ADEM.
 

 [2]
 

 . As explained later in this opinion, Green Mountain Management, LLC, is the successor in interest to CMS.
 

 [3]
 

 . Section 22-27-48(b) provides, in pertinent part:
 

 "Following local review and approval of any proposal regarding services or activities described in the local solid waste management plan, the applicant shall obtain a statement of consistency from the regional planning and development commission.”