988 So.2d 574 (2008)
HEALTH CARE AUTHORITY OF ATHENS and Limestone County
v.
STATEWIDE HEALTH COORDINATING COUNCIL et al.
2060385.
Court of Civil Appeals of Alabama.
January 18, 2008.
*577 P. Michael Cole of Wilmer & Lee, P.A., Athens, and Robert C. Lockwood of Wilmer & Lee, P.A., Huntsville, for appellant.
Mark D. Wilkerson and Dana H. Billingsley of Wilkerson & Bryan, P.C., Montgomery, for appellees.
BRYAN, Judge.
The Health Care Authority of Athens and Limestone County ("the Authority"), the plaintiff in a declaratory-judgment action, appeals from a summary judgment entered in favor of the Statewide Health Coordinating Council ("the Council"); the State Health Planning and Development Agency ("SHPDA"); Alva Lambert, the director of SHPDA; John Rochester, the chairman of the Council; and Governor Bob Riley (collectively "the State defendants"). We affirm.
In September 2005, Madison County Commissioner Dale Strong petitioned the Council for an adjustment to the 2004-2007 Alabama State Health Plan. The Council is a state agency that prepares, reviews, revises, and approves the State Health Plan. § 22-4-8(b)(2), Ala.Code 1975; see Ex parte Traylor Nursing Home, Inc., 543 So.2d 1179, 1184-86 (Ala. 1988) (stating that the Council is an agency within the meaning of the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala.Code 1975). The State Health Plan is a comprehensive plan that "provide[s] for the development of health programs and resources to assure that quality health services will be available and accessible in a manner which assures continuity of care, at reasonable costs, for all residents of the state." § 22-21-260(13), Ala. Code 1975. The State Health Plan is a part of the Alabama Administrative Code. See Rule 410-2-1 et seq., Ala. Admin. Code (SHPDA).
Commissioner Strong proposed an adjustment to the State Health Plan to indicate the need for 60 acute-care hospital beds in the City of Madison ("the City"), in Madison County. Commissioner Strong's *578 application stated that there was not a hospital located within the City. On September 27, 2005, the Council approved the proposed adjustment to the State Health Plan. On September 29, 2005, Governor Riley approved the adjustment. The adjustment is emphasized in the following provision in the State Health Plan:
"(7) Beds Needed (Excess Beds). Pages 65 and 66 summarize the bed need calculations for each Alabama County. Calculations indicate that there is not a need for additional beds anywhere in the state. However, in Bullock and Jackson counties the [Council] approved adjustments for additional beds, therefore those two counties show a need for beds. On September 27, 2005 the Statewide Health Coordinating Council (SHCC) approved the addition of (60) acute care hospital beds in the City of Madison, Madison County, Alabama. Overall, there are 7,569 excess hospital beds in Alabama; Jefferson County alone has 2,051. Following the bed need summary is a complete inventory of Alabama's hospitals."
Rule 410-2-4-.02(7), Ala. Admin. Code (SHPDA) (emphasis added).[1]
On October 17, 2005, the Authority sued the State defendants, seeking declaratory and injunctive relief. The Authority owns and operates Athens-Limestone Hospital, located in Limestone County, which borders Madison County. The Authority's complaint and petition alleged that the Council had adopted the adjustment in violation of the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala. Code 1975 ("the AAPA"), and the State Health Plan. Crestwood Medical Center, Inc. ("Crestwood Medical"), which owns and operates a hospital in Madison County, filed a motion to intervene as a defendant, which the trial court granted.
The State defendants subsequently moved for a summary judgment. On September 8, 2006, the trial court entered a summary judgment in favor of the State defendants.[2] In its summary judgment, the trial court concluded that the Authority lacked standing to challenge the adjustment and that, regardless of whether the Authority had standing, the Council had not adopted the adjustment in violation of either the AAPA or the State Health Plan. Following the denial of its postjudgment motion, the Authority timely appealed to this court.
"Appellate review of a summary judgment is de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing `that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.' Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 *579 (Ala.1992). If the movant meets this burden, `the burden then shifts to the nonmovant to rebut the movant's prima facie showing by "substantial evidence."' Lee, 592 So.2d at 1038 (footnote omitted). `[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d)."
Hunt v. NationsCredit Fin. Servs. Corp., 902 So.2d 75, 83 (Ala.Civ.App.2004).
Initially, we address whether the Authority had standing to challenge the adjustment. The Authority argues that it had standing pursuant § 41-22-10, Ala. Code 1975, which provides, in pertinent part:
"The validity or applicability of a rule may be determined in an action for a declaratory judgment or its enforcement stayed by injunctive relief ... if the court finds that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff.... In passing on such rules the court shall declare the rule invalid only if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without substantial compliance with rulemaking procedures provided for in this chapter."
The AAPA "shall be construed broadly to effectuate its purposes." § 41-22-25(a), Ala.Code 1975. The purposes of the AAPA include increasing the availability of judicial review of agency actions and increasing administrative agencies' public accountability. § 41-22-2(b), Ala.Code 1975. The phrase "interferes with or impairs, or threatens to interfere with or impair [the plaintiff's] legal rights or privileges" has been liberally construed to confer standing on a broad class of plaintiffs who seek to challenge administrative rules. Medical Ass'n of Alabama v. Shoemake, 656 So.2d 863, 866 (Ala.Civ.App.1995).
In moving for injunctive and declaratory relief, the Authority challenged the validity of the adjustment, which is now a part of the State Health Plan. Because the State Health Plan is a "regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy," see § 41-22-3(9), Ala.Code 1975, it may generally be considered a "rule" within the meaning of the AAPA. See also Ex parte Traylor Nursing Home, Inc., 543 So.2d at 1183 ("Although the [State Health Plan] may contain information and statistical data that do not constitute rules, the [State Health Plan] also prescribes, implements, and describes state policy and procedure."(emphasis omitted)). Because the Authority sought declaratory and injunctive relief concerning the validity of a part of the State Health Plan, the Authority's action is of the type contemplated by § 41-22-10.
However, in order to have standing under § 41-22-10, the Authority also had to establish that a "rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, [its] legal rights or privileges." § 41-22-10, Ala. Code 1975. The adjustment recognized the need for 60 additional acute-care hospital beds in the City. The Authority submitted evidence indicating that, if a competing health-care provider were to build a 60-bed acute-care hospital in the City following the adoption of the adjustment, the Authority's hospital would lose physicians and patients, thus jeopardizing the hospital's existence. Although a hospital could not be built in the City without a health-care *580 provider first obtaining a certificate of need from SHPDA, § 22-21-265(a), Ala. Code 1975, the adjustment is a necessary step to such a hospital being built. § 22-21-263(a), Ala.Code 1975. Construing § 41-22-10 liberally to effectuate the AAPA's purposes, the Authority had standing to seek declaratory and injunctive relief.
The Authority argues that the adjustment is invalid because, the Authority says, the adjustment is actually a "rule" under the AAPA that was not adopted pursuant to the AAPA's rulemaking procedures. The Authority argues that the Council, in making an adjustment on a city-wide basis rather than on a county-wide basis, substantially changed its interpretation of a part of the State Health Plan, consequently enacting a "rule." In making this argument, the Authority cites Hartford Healthcare, Inc. v. Williams, 751 So.2d 16, 22 (Ala.Civ.App.1999), which states that "[w]hen an administrative agency substantially changes its interpretation of its regulation and the new interpretation `substantially affects the legal rights of, or procedures available to, the public or any segment thereof,' the administrative agency is bound to comply with formal AAPA rulemaking procedures." (Quoting § 41-22-3(9)(c), Ala.Code 1975.)
The Authority first argues that the Council "changed" its interpretation of the State Health Plan by adopting an interpretation of that plan that contradicts Rule 410-2-4-.02(3)(a), Ala. Admin. Code (SHPDA). Rule 410-2-4-.02, Ala. Admin. Code (SHPDA), discusses "the methodology for computing acute care bed need" and the "criteria for making adjustments to the computed bed need." Rule 410-2-4-.02(1). Rule 410-2-4-.02(3)(a), Ala. Admin. Code (SHPDA), provides that "[t]he planning area used in this methodology is the county," except for certain counties that are grouped with other counties. Rule 410-2-4-.02(4), Ala. Admin. Code (SHPDA), which provides the criteria for adjustments to the State Health Plan, indicates that the Council may make adjustments with respect to both a "county" and an "area."[3]
The Authority argues that Rule 410-2-4-.02(3)(a) expressly provides that adjustments concerning acute-care-bed needs must be made on a county-wide basis. However, Rule 410-2-5-.04(2)(a), Ala. Admin. Code (SHPDA), indicates that *581 an adjustment generally may be made to an area smaller than a county:
"(a) Plan Adjustment  A requested modification or exception to the [State Health Plan] to permit additional facilities, beds, services, or equipment to meet the identified needs of a specific county, or part thereof, or another specific planning region that is less than statewide and identified in the State Health Plan."
(Emphasis added.) The Authority argues that this provision requires the Council to make an adjustment regarding only areas "identified in the State Health Plan." The Authority further argues that, pursuant to Rule 410-2-4-.02(3)(a), the "county" is the area "identified in the State Health Plan" for an adjustment concerning acute-care-bed needs. However, the Council could have reasonably interpreted Rule 410-2-5-.04(2) to allow for an acute-care-bed-need adjustment to an area smaller than a county. Rule 410-2-5-.04(2)(a) may be read as establishing that an adjustment may meet the needs of "a specific county, or part thereof," on the one hand, or "another specific planning region that is less than statewide and identified in the State Health Plan," on the other hand. The Council evidently interpreted Rule 410-2-5-.04(2)(a) in this manner in adopting the adjustment. "[A]n agency's interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation." Sylacauga Health Care Ctr., Inc. v. Alabama State Health Planning Agency, 662 So.2d 265, 268 (Ala.Civ.App. 1994). Accordingly, we will not disturb the Council's interpretation of Rule 410-2-5-.04(2)(a) allowing for an adjustment with respect to an area smaller than a county.
The Authority also argues that the Council changed its previous interpretation of the State Health Plan by adopting the adjustment on a city-wide rather than a county-wide basis. Therefore, the Authority argues that the adjustment was actually a "rule" under the AAPA requiring compliance with the AAPA's rulemaking procedures. See Hartford Healthcare, supra. The Authority notes that Rule 410-2-4-.02(7) indicates that the Council had previously made acute-care-bed-need adjustments regarding Bullock County and Jackson County. The Authority also notes that there is no indication that, before the adjustment in this case, the Council had ever adopted an acute-care-bed-need adjustment regarding an area smaller than a county. Therefore, the Authority argues, the Council "substantially change[d] its interpretation of its regulation," requiring compliance with the AAPA's rulemaking procedures. Hartford Healthcare, 751 So.2d at 22.
However, with respect to home-health-care services, the Council has previously interpreted the State Health Plan to permit an adjustment pertaining to an area smaller than a county, despite the fact that the county is designated as the applicable "planning area" in the State Health Plan. The record on appeal reveals that the Council adjusted the 1996-1999 State Health Plan to address home-health-care services within the City of Tallassee, although the county was the standard planning area for home-health-care services. As we have stated, Rule 410-2-5-.04(2)(a) may reasonably be interpreted as permitting such an adjustment pertaining to an area smaller than a county. The record does not indicate that the Council has ever interpreted the State Health Plan to allow for only an acute-care-bed-need adjustment on a county-wide basis. The record indicates that the Council has made acute-care-bed-need adjustments at the county level but has also made a home-health-care adjustment limited to an area smaller than a county, despite the fact that the county *582 is the designated "planning area." Accordingly, we cannot say that the Council has changed its interpretation of the State Health Plan. Because the Council has not changed its interpretation of the State Health Plan, the Council was not "bound to comply with formal AAPA rulemaking procedures" in adopting the adjustment, as the Authority argues. Hartford Healthcare, 751 So.2d at 22.
Alternatively, the Authority argues that, even if the adjustment is not a rule subject to the AAPA's rulemaking procedures, the Council failed to comply with certain regulatory requirements for adopting adjustments.
"`Rules, regulations, and general orders of administrative authorities pursuant to powers delegated to them have the force and effect of laws when they are of statewide application and so promulgated that information of their nature and effect is readily available or has become part of common knowledge. State v. Friedkin, 244 Ala. 494, 14 So.2d 363 (1943). Moreover, where an agency prescribes rules and regulations for the orderly accomplishment of its statutory duties, its officials must vigorously comply with those requirements; regulations are regarded as having the force of law and, therefore, become a part of the statutes authorizing them. American Federation of Government Employees v. Callaway, 398 F.Supp. 176 (N.D.Ala. 1975).'"
Ex parte Wilbanks Health Care Servs., Inc., 986 So.2d 422, 424-25 (Ala.2007) (quoting Hand v. State Dep't of Human Res., 548 So.2d 171, 173 (Ala.Civ.App. 1988), aff'd, 548 So.2d 176 (Ala.1988)) (emphasis omitted).
The Authority argues that the Council approved the adjustment despite Commissioner Strong's alleged noncompliance with Rule 410-2-5-.05, Ala. Admin. Code (SHPDA), which provides the "organizational outline" to be used in applying for an adjustment to the State Health Plan.[4] Rule 410-2-5-.05(6), Ala. Admin. Code (SHPDA), provides: "If the application is to increase beds or services in a planning area, give evidence that those beds or services have not been available and/or accessible to the population of the area. Provide names of individuals denied services." The Authority argues that Commissioner Strong did not comply with this requirement because, the Authority says, his application lacked the names of individuals who were allegedly denied services. In its summary judgment, the trial court stated that "[t]he record ... contains correspondence from individuals supporting the proposed adjustment who stated that their inability to expeditiously obtain the proposed services could have adversely affected their medical outcomes." The Authority does not argue that the record lacks the names of those individuals; rather, it asserts that those names were not in the application itself. However, Commissioner Strong's application incorporated by reference "letters of support and testimony transcripts" submitted in support of the application. Accordingly, the application contained the names of individuals who alleged that they had been "denied services."
The Authority also argues that Commissioner Strong failed to satisfy another component of Rule 410-2-5-.05(6) because, the Authority says, the evidence submitted only indicates that individuals could not "expeditiously obtain" services, not that they were "denied" services. *583 Rule 410-2-5-.05(6), read in its entirety, includes the lack of "availability" and "accessibility" of health-care services within the conception of "denied" services in the rule ("[G]ive evidence that ... beds or services have not been available and/or accessible to the population of the area. Provide names of individuals denied services."). The evidence submitted contains allegations that some residents living in or near the City had to travel for at least 30 minutes to obtain medical services. Rule 410-2-4-.02(4)(a)(1), Ala. Admin. Code (SHPDA), provides that the Council may make an adjustment to "the needed beds" if the Council receives "[e]vidence that residents of an area do not have access to necessary health services. Accessibility refers to the individual's ability to make use of available health resources. Problems which might affect access include persons living more than 30 minutes travel time from a hospital...." Therefore, the State Health Plan contemplates that a delay in obtaining medical services constitutes a lack of accessibility that would support an adjustment. Because the evidence submitted in support of the application indicates a lack of adequately available and accessible health care, it satisfies the requirements of Rule 410-2-5-.05(6).
Next, the Authority argues that the Council adopted the adjustment in violation of Rule 410-2-4-.02(4)(a)2-3, Ala. Admin. Code (SHPDA), which provides, in pertinent part:
"(a) The [Council] may make adjustments to the needed beds determined by the methodology described above if evidence is introduced to the [Council] in each of the [following] criteria...:
"....
"2. Evidence that a plan adjustment would result in health care services being rendered in a more cost-effective manner....
"3. Evidence that a plan adjustment would result in improvements in the quality of health care delivered to residents of an area...."
The Authority argues that the Council was not presented with evidence indicating that the adjustment would result in more cost-effective health-care services and improve the quality of health care. However, the Council was presented with evidence indicating that residents living in or near the City must expend significant travel time in order to reach the hospital nearest to the City, that that hospital routinely experiences long emergency-room waits, that delayed medical treatment may cause various adverse medical effects, and that residents will likely continue to experience inadequate access to health-care services as the population of the area grows. Accordingly, we conclude that there was evidence satisfying the requirements of Rule 410-2-4-.02(4)(a)2-3. To the extent that the Authority may seek to question the weight of the evidence supporting the adjustment, we note that "a reviewing court cannot substitute its judgment for that of the [agency] by reweighing the evidence as to questions of fact.... This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result." Health Care Auth. of Huntsville v. State Health Planning Agency, 549 So.2d 973, 975 (Ala.Civ. App.1989).
Next, the Authority argues that the Council erred by approving Commissioner Strong's application because, the Authority says, the application did not contain the specific language of the proposed adjustment. Rule 410-2-5-.04(3)(a), Ala. Admin. Code (SHPDA), at the time Commissioner Strong submitted his application, required the application for an adjustment to "state with specificity *584 the proposed language of the adjustment." Commissioner Strong's application states that it "proposes to adjust Chapter 410-2-4-.02 of the 2004-2007 Alabama State Health Plan to indicate a need for 60 acute care hospital beds to be located within the City of Madison in Madison County." This language contains essentially the same language as that of the adjustment. Accordingly, we find no violation of the requirement that the application state with specificity the language of the proposed adjustment.
For the foregoing reasons, we affirm the summary judgment of the trial court concluding that the Council properly adopted the adjustment.
AFFIRMED.
PITTMAN, J., concurs.
BRYAN, J., concurs specially.
THOMPSON, P.J., concurs in the result, with writing, which MOORE, J., joins.
THOMAS, J., dissents, with writing.
BRYAN, Judge, concurring specially.
The State Health Plan defines a "plan adjustment" as "[a] requested modification or exception to the [State Health Plan] to permit additional facilities, beds, services, or equipment to meet the identified needs of a specific county, or part thereof, or another specific planning region that is less than statewide and identified in the State Health Plan." Rule 410-2-5-.04(2)(a), Ala. Admin. Code (SHPDA). The State Health Plan provides that a "plan adjustment" is not subject to the rulemaking procedures mandated by the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala.Code 1975 ("the AAPA"). Rule 410-2-5-.04(3), Ala. Admin. Code (SHPDA). However, in some cases, a revision to the State Health Plan that meets the definition of a "plan adjustment" may in fact be a rule subject to the AAPA's rulemaking procedures. The AAPA defines a "rule" as an "agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy." § 41-22-3(9), Ala. Code 1975. An "adjustment" to the State Health Plan that meets this definition is a "rule" subject to formal rulemaking procedures.
In the context of state administrative law, the term "general applicability" includes
"[e]very statement implementing, interpreting, or prescribing law or policy that is directed at a class by description, that is, directed at all persons similarly situated, rather than at named individuals.... Statements of general applicability are to be distinguished from statements of particular applicability, which are addressed to specified individuals rather than to all individuals who are similarly situated."
Arthur Earl Bonfield, State Administrative Rule Making § 3.3.1 (1986) (emphasis omitted). Moreover,
"`to be of general application a rule need not apply to all persons within the state. Even though an action applies only to persons within a small class, the action is of general application if that class is described in general terms and new members can be added to the class.'"
Id. at 3.3.2(b) (quoting Citizens for Sensible Zoning, Inc. v. Department of Natural Res., Columbia County, 90 Wis.2d 804, 815-16, 280 N.W.2d 702, 707-08 (1978)).
In this case, I have serious concerns regarding the use of a "plan adjustment" to avoid formal rulemaking in adopting what appears to be a generally applicable revision to the State Health Plan. However, the Authority does not argue that the *585 adjustment in this case is generally applicable and therefore a rule under the AAPA. This court's decision in Montgomery Rehabilitation Hospital, Inc. v. State Health Planning Agency, 610 So.2d 403 (Ala.Civ.App.1992), is relevant to a potential argument that a revision to the State Health Plan concerning an area smaller than the entire state may be of "general applicability." In Montgomery Rehabilitation, this court stated that the adjustment in that case was not "generally applicable" because the adjustment "[was] limited in geographic scope and [was] not applicable to all potential and existing rehabilitation service providers statewide." 610 So.2d at 407. This court therefore concluded that the adjustment in that case was not a "rule" within the meaning of the AAPA. Id. at 406-07.
The Authority attempts to distinguish Montgomery Rehabilitation from this case and asks this court not to "endors[e] Montgomery Rehab[ilitation]'s unsubstantiated, per se geographic rule" concerning whether an "adjustment" is actually a "rule" under the AAPA. However, the Authority does not ask us to overrule Montgomery Rehabilitation. Had the Authority asked us to overrule that case, I would have been inclined to do so insofar as it established a "geographic scope" standard for determining general applicability. However, "`[s]tare decisis commands, at a minimum, a degree of respect from [an appellate court] that makes it disinclined to overrule controlling precedent when it is not invited to do so.'" Clay Kilgore Constr., Inc. v. Buchalter/Grant, L.L.C., 949 So.2d 893, 898 (Ala. 2006) (quoting Moore v. Prudential Residential Servs. Ltd. P'ship, 849 So.2d 914, 926 (Ala.2002)).
THOMPSON, Presiding Judge, concurring in the result.
Under the applicable provisions of the Alabama Administrative Code, there are three ways in which the State Health Plan ("SHP") may be changed: through a plan adjustment, by way of a statistical update, or through a plan amendment. Statistical updates are not at issue in this appeal. The Alabama Administrative Code defines the other two methods of revising the SHP as follows:
"(a) Plan Adjustment  A requested modification or exception to the SHP to permit additional facilities, beds, services, or equipment to meet the identified needs of a specific county or part thereof, or another specific planning region that is less than statewide and identified in the State Health Plan.
"....
"(c) Plan Amendment  The alteration or adoption of rules, policies, methodologies, or any other plan revision that does not meet the plan adjustment or statistical update definition. An amendment is of `general applicability.'"
Rule 410-2-5-.04(2), Ala. Admin. Code (SHPDA).
Because a plan amendment is "of `general applicability,'" it falls within the definition of a "rule" subject to the requirements of the Alabama Administrative Procedure Act ("AAPA"), § 41-22-1 et seq., Ala.Code 1975. See § 41-22-3(9), Ala.Code 1975 (defining "rule" for the purposes of the AAPA); see also Ex parte Traylor Nursing Home, Inc., 543 So.2d 1179, 1183-84 (Ala.1988) (concluding that an amendment to the SHP, because it was of "general applicability," was a "rule" subject to the rule-making requirements of the AAPA); and Montgomery Rehabilitation Hosp., Inc. v. State Health Planning Agency, 610 So.2d 403, 407 (Ala.Civ.App.1992) (holding the revision to the SHP at issue in that case was a "plan adjustment," and, therefore, that it was not subject to the requirements *586 of the AAPA). Also, Rule 410-2-5-.04(3), Ala. Admin. Code (SHPDA), which governs the procedures for revising the SHP, specifies that plan amendments must be adopted in accordance with the provisions of the AAPA. That same rule provides that "[p]lan adjustments and statistical updates are not subject to the [AAPA]." Rule 410-2-5-.04(3).
The resolution of whether the revision to the SHP at issue in this case is a plan amendment (or rule) or a plan adjustment is central to the disposition of this appeal. "In order to decide that the [revision] is governed by the AAPA requirements, we must conclude that the [revision] is a 'rule'" subject to the requirements of the AAPA. Ex parte Traylor Nursing Home, Inc., 543 So.2d at 1182 (ultimately holding that the change to the SHP at issue in that case was a plan amendment, or rule, that was subject to the rulemaking provisions of the AAPA). It is not disputed that, in approving the revision to the SHP at issue in this matter, the Statewide Health Coordinating Council ("the SHCC") did not attempt to comply with the formal rulemaking procedures of the AAPA. The Health Care Authority of Athens and Limestone County ("the Authority") contends that the revision to the SHP at issue in this case is a plan amendment and, therefore, that, in adopting that revision, the SHCC was required to comply with the rulemaking provisions of the AAPA. Therefore, the Authority maintains, the trial court erred in excusing the SHCC from complying with the rulemaking procedures of the AAPA. In contrast, the SHCC insists that the revision to the SHP falls within the definition of a plan adjustment, the adoption of which was not subject to the provisions of the AAPA.
In its judgment, the trial court determined that the revision to the SHP at issue in this case was a plan adjustment and, therefore, not subject to the rulemaking provisions of the AAPA. Based on that determination, the trial court concluded, among other things, that the Authority lacked standing to challenge the SHCC's adoption of the plan adjustment. Recent authority from Alabama's Supreme Court indicates, however, that the Authority did have standing to bring its action under both the AAPA and the Declaratory Judgment Act, § 6-6-220 et seq., Ala.Code 1975. See Alabama Dep't of Envtl. Mgmt. v. Coosa River Basin Initiative, Inc., 826 So.2d 111, 117-18 (Ala.2002) (noting that a contrary conclusion would leave the party challenging the administrative agency's action without an adequate remedy); see also footnote 5, infra.
The trial court relied on Montgomery Rehabilitation Hospital, Inc. v. State Health Planning Agency, supra (hereinafter "Montgomery Rehab"), in reaching its judgment determining that the revision to the SHP was a plan adjustment. As they did before the trial court, the parties have extensively argued their respective positions by referencing and analyzing Montgomery Rehab in their briefs submitted to this court. Accordingly, I believe that we should, at the very least, analyze this court's decision in Montgomery Rehab as it applies to this case.
In Montgomery Rehab, the SHCC adopted a revision to the SHP by adding an authorization for 26 additional rehabilitation beds for the Dothan area; Dothan is located within Houston County. A Houston County health-care facility, Southeast Alabama Medical Center ("Southeast") was ultimately awarded a "Certificate of Need" ("CON") for those rehabilitation beds. In its judgment awarding the CON to Southeast, the trial court determined that the revision to the SHP at issue in that case was not a plan amendment that was equivalent to a rule for the purposes *587 of the AAPA. 610 So.2d at 405. As a part of its appeal of the judgment awarding the CON to Southeast, Montgomery Rehabilitation Hospital, Inc. ("Montgomery Rehab"), challenged the revision to the SHP. This court rejected that challenge and affirmed the trial court's judgment. In so holding, this court noted that a "rule" under the AAPA is "an `agency regulation, standard or statement of general applicability.'" (Quoting § 41-22-3(9).) However, the revision at issue in that case was "limited in geographic scope and [was] not applicable to all potential and existing rehabilitation service providers statewide." 610 So.2d at 407 (emphasis added). The court concluded that because the revision was not generally applicable, it constituted a plan adjustment under what is now § 410-2-5-.04(2). Montgomery Rehab., 610 So.2d at 407.[5]
In this case, the trial court noted in its judgment that the Authority had not alleged that the revision to the SHP at issue is generally applicable in any context.[6] *588 Therefore, because it does not contend that the revision to the SHP is generally applicable, the Authority has not relied on the definitions of "plan amendment" contained in Rule 410-2-5-.04(c) in arguing that the revision to the SHP is a plan amendment rather than a plan adjustment. Instead, the Authority asserts other arguments in support of its contention that the revision to the SHP constitutes a plan amendment subject to the requirements of the AAPA.
The Authority maintains that, in adopting the revision at issue in this case, the SHCC altered its interpretation of the SHP. It cites to Hartford Healthcare, Inc. v. Williams, 751 So.2d 16, 22 (Ala.Civ.App. 1999), for the proposition that "[w]hen an administrative agency substantially changes its interpretation of its regulation and the new interpretation `substantially affects the legal rights of, or procedures available to, the public or any segment thereof,' the administrative agency is bound to comply with formal AAPA rulemaking procedures." (Quoting § 41-22-3(9)(c).)
The Authority contends that the planning area for alterations to the SHP is identified as the "county," see Rule 410-2-4-.02(3), and that, in allowing the revision to the SHP for an area less than a county, the SHCC altered its interpretation of the SHP, thus requiring the revision to the SHP be adopted pursuant to the AAPA. However, Rule 410-2-5-.04, Ala. Admin. Code (SHPDA), which governs the procedures by which the SHP may be revised, provides, in subsection (2)(a), that a plan adjustment may be made with regard to a specific county, "or part thereof."
The Authority asserts that "the county has historically been the area required for making adjustments" to the SHP for acute-care beds; it cites Rule 410-2-4-.02(7) in support of that argument. That rule notes that although there is no need in the 2004-2007 SHP for additional acute-care beds in Alabama, "in Bullock and Jackson counties, the SHCC approved adjustments for additional beds." In this case, because the revision to the SHP at issue pertains to an area that is part of a county and at least one[7] previous plan adjustment was made on a county-wide basis, the Authority characterizes the difference as a "change" in the SHCC's interpretation of the SHP.
In Hartford Healthcare, Inc. v. Williams, supra, a state agency changed its long-standing interpretation of a rule as it pertained to all medical providers to whom the rule applied. In that case, the agency conceded that the new interpretation of the rule was "a complete reversal of its initial position on the interpretation of the rule." Hartford Healthcare, Inc. v. Williams, 751 So.2d at 21.
I cannot agree that the SHCC's adoption of plan adjustments on a county-wide basis for two counties in the 2004-2007 SHP amounted to an "interpretation" that would restrict the SHCC to allowing only plan adjustments that pertained to an entire *589 county and not to "a part thereof." The SHCC has not conceded, and I find no evidence indicating, that the SHCC's adjusting the SHP on less than a county-wide basis is a "reversal" of any previous long-standing interpretation of the SHP. See Hartford Healthcare, Inc. v. Williams, supra.
Also, I note that the SHCC's interpretation of the revision to the SHP as a plan adjustment is entitled to deference. "[A]n agency's interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation." Sylacauga Health Care Ctr., Inc. v. Alabama State Health Planning Agency, 662 So.2d 265, 268 (Ala.Civ.App.1994). Further, "[a] decision by a state agency is presumed to be correct and will be affirmed unless it is arbitrary or capricious or fails to comply with the applicable law." State Health Planning & Dev. Agency v. Baptist Health Sys., Inc., 766 So.2d 176, 178 (Ala.Civ.App. 1999) (citing Alacare Home Health Servs., Inc. v. Baptist Hosp. of Gadsden, Inc., 655 So.2d 995 (Ala.Civ.App.1994)); see also Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App. 1993) (Noting that "[t]he special competence of the agency lends great weight to its decision, and that decision must be affirmed, unless it is arbitrary and capricious or not made in compliance with applicable law." (emphasis added)).
It appears that in adjusting the SHP the SHCC interpreted the applicable administrative regulations as allowing the adjustment to be with regard to only a part of a county. The specific language of Rule 410-2-5-.04(2)(a) supports such an interpretation. Therefore, I cannot conclude that the SHCC's interpretation of its regulations as establishing a plan adjustment under the facts of this case is unreasonable, arbitrary, or not in compliance with applicable law. State Health Planning & Dev. Agency v. Baptist Health Sys., Inc., supra; Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, supra.
As noted earlier, Rule 410-2-5-.04(2)(a) defines an adjustment as
"[a] requested modification or exception to the SHP to permit additional facilities, beds, services, or equipment to meet the identified needs of a specific county, or part thereof, or another specific planning region that is less than statewide and identified in the State Health Plan."
Based on that definition, I disagree with the conclusion in the dissenting opinion that an adjustment may be made with reference to "a specific county or part thereof," only if a need is "identified in the [SHP]." See Rule 410-2-5-.04(2), Ala. Admin.Code (SHPDA). As a matter of policy, I am concerned that that interpretation would provide no applications under which an adjustment to the SHP could be made. The SHP itself is subject to the AAPA rulemaking procedures. Therefore, the identification in the SHP of any area that might have additional health-care-service needs is also subject to those procedures. Under the interpretation advocated by the dissent, an adjustment could be granted only after the needs of the area are subjected to AAPA rulemaking review, thereby providing no field of operation for an adjustment different from that of an amendment.
I interpret that portion of the definition of "adjustment" stating "and identified in the [SHP]," to modify only "or another specific planning region that is less than statewide." Our supreme court has explained:
"`By what is known as the doctrine of the "last antecedent," relative and qualifying *590 words, phrases, and clauses, are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote.'"
White v. Knight, 424 So.2d 566, 567 (Ala. 1982) (quoting 82 C.J.S. Statutes § 334 (1953)). Although the doctrine of the last antecedent is a "general rule of statutory construction," it should be followed unless "`a more remote antecedent is clearly required by a consideration of the entire act.'" Id. at 567-68. I do not believe that an interpretation of the definition of "adjustment" based on the "more remote antecedent" (i.e., that of "a specific county, or part thereof") is clearly dictated by the Rule 410-2-5-.04.
For the foregoing reasons, I believe that the Authority has failed to demonstrate that the revision to the SHP at issue in this case is an amendment to the SHP that would be subject to the rulemaking requirements of the AAPA. I agree with the trial court's determination that the revision to the SHP at issue in this case is a plan adjustment under Rule 410-2-5-.04(2), Ala. Admin. Code (SHPDA), and, therefore, that it is not subject to the rulemaking procedures of the AAPA. See Rule 410-2-5-.04(3), Ala. Admin. Code (SHPDA) ("Plan adjustments [to the SHP]... are not subject to the [A]APA."); Montgomery Rehab, supra.
MOORE, J., concurs.
THOMAS, Judge, dissenting.
The central issue presented by this appeal is whether a revision to the State Health Plan ("SHP") to provide for 60 acute-care hospital beds in the City of Madison is an "adjustment" or an "amendment" to the SHP. The distinction between an adjustment and an amendment is important because "plan adjustments, unlike plan amendments, `are not subject to the [rulemaking requirements of the] Alabama Administrative Procedure Act.'" Montgomery Rehabilitation Hosp., Inc. v. State Health Planning Agency, 610 So.2d 403, 406 (Ala.Civ.App.1992) (quoting Rule 410-2-5-.05(3), Ala. Admin. Code (SHPDA)), and the plan revision in this case was not preceded by notice-and-comment rulemaking pursuant to the Alabama Administrative Procedure Act ("the AAPA"), § 41-22-1 et seq., Ala.Code 1975.
Rule 410-2-5-.04(2)(a), Ala. Admin. Code (SHPDA), defines an adjustment as
"[a] requested modification or exception to the SHP to permit additional facilities, beds, services, or equipment to meet the identified needs of a specific county, or part thereof, or another specific planning region that is less than statewide and identified in the State Health Plan."
Rule 410-2-5-.04(2)(c) defines an amendment as
"[t]he alteration or adoption of rules, policies, methodologies, or any other plan revision that does not meet the plan adjustment or statistical update definition. An amendment is of `general applicability.'"
In Montgomery Rehabilitation, the Statewide Health Coordinating Council ("the SHCC") revised a rule to allow for 26 new physical-rehabilitation beds in the Dothan area. The SHCC contended that the revision was an "adjustment" that was not subject to the rulemaking procedures of the AAPA. The opposing parties claimed that the revision was a "rule." This court held that the revision was not a rule for two reasons, namely: (1) because the revision was not "generally applicable," that is, because it applied only to the Dothan area  just as the revision here applies only to the City of Madison; and (2) because the revision did not "prescrib[e] new *591 requirements for all healthcare providers in the state," 610 So.2d at 407, but was, instead, specifically "contemplated in the language of the 1988-1992 SHP as it was originally adopted," id.
In his special concurrence, Judge Bryan states that, had this court been asked to overrule Montgomery Rehabilitation, he would have been inclined to do so, insofar as that case "established a `geographic scope' standard for determining [the] general applicability" of an administrative rule. ___ So.2d at ___. I do not believe it is necessary to overrule Montgomery Rehabilitation. Instead, like the Health Care Authority of Athens and Limestone County ("the Authority"), I think Montgomery Rehabilitation can be distinguished based on the second part of its holding  that the revision to the SHP to allow for more rehabilitation beds in the Dothan area did not prescribe new requirements but was specifically contemplated in the SHP. In other words, the revision in Montgomery Rehabilitation fell squarely within the definition of an "adjustment" because the underserved needs of a specific planning region  the Dothan area  had previously been identified in the SHP.
In contrast, the revision in the present case established a new rule  that a city can be considered the relevant planning region for acute-care hospital beds, even when the needs of that city have not been previously identified in the SHP. The current SHP does not identify the City of Madison as an underserved area with regard to acute-care hospital beds or contemplate that a shortage of acute-care beds in the City of Madison may be addressed by an adjustment to the SHP. Quite to the contrary, the SHP establishes the county as the relevant planning region for acute-care beds and specifically finds that Madison County, of which the City of Madison is a part, has an excess of 350 acute-care beds.
The main opinion reaches the conclusion that the acute-care-bed revision for the City of Madison was an adjustment rather than an amendment to the SHP by construing the language of Rule 410-2-5-.04(2)(a) in such a way that it renders the rule incomplete and ambiguous. Rule 410-2-5-.04(2)(a) defines an adjustment as
"[a] requested modification or exception to the SHP to permit additional facilities, beds, services, or equipment to meet the identified needs of a specific county, or part thereof, or another specific planning region that is less than statewide and identified in the State Health Plan."
(Emphasis added.) The main opinion states:
"Rule 410-2-5-.04(2)(a) may be read as establishing that an adjustment may meet the needs of `a specific county, or part thereof,' on the one hand, or `another specific planning region that is less than statewide and identified in the State Health Plan,' on the other hand."
___ So.2d at ___. Administrative rules are subject to the same well-known maxims of construction as statutes. See generally 73 C.J.S. Public Administrative Law & Procedure § 211 (2007). "The language used in an administrative regulation should be given its natural, plain, ordinary, and commonly understood meaning, just as language in a statute. Alabama Medicaid Agency v. Beverly Enterprises, 521 So.2d 1329 (Ala.Civ.App.1987)." State Pers. Bd. v. Wallace, 682 So.2d 1357, 1359 (Ala.Civ. App.1996).
The plain meaning of Rule 410-2-5-.04(2)(a) is that an adjustment is a modification to the SHP to meet the identified needs of a county, a part of a county, or some other planning region that is smaller than the state as a whole and that is *592 identified in the SHP. When the main opinion parses the definition into two alternatives, with the first alternative allowing an adjustment to "meet the needs of `a specific county, or part thereof,'" the main opinion omits the word "identified" before the word "needs." "`"`There is a presumption that every word, sentence, or provision [of a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.'"'" Trott v. Brinks, Inc., 972 So.2d 81, 88 n. 4 (Ala. 2007) (quoting Richardson v. Stanford Props., LLC, 897 So.2d 1052, 1058 (Ala. 2004), quoting in turn Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997), quoting in turn other sources).
By omitting the word "identified" as a modifier for the word "needs," the main opinion separates the first alternative from the rest of the sentence, thereby making the second alternative  "`another specific planning region that is less than statewide'"  the only planning region whose needs are required to be identified in the SHP. That reading renders the rule incomplete and ambiguous because one is left to wonder by whom the "identified needs of a specific county, or part thereof," must be identified. Can the "needs of a specific county, or part thereof," be identified by anyone  a county commissioner, a local politician running for office, a manufacturer or seller of medical equipment  and thereby be included as an adjustment to the SHP? If an adjustment can be identified by anyone and can be included in the SHP without statewide input via the notice-and-comment process of the rulemaking procedures of the AAPA, then such adjustments have the potential to destroy the integrity, continuity, and comprehensiveness of the SHP, which is
"a comprehensive plan prepared by the Statewide Health Coordinating Council to provide for the `development of health programs and resources to assure that quality health services will be available and accessible in a manner which assures continuity of care, at reasonable costs, for all residents of the state.' § 22-21-260(4), Ala.Code 1975."
Auburn Med. Ctr., Inc. v. East Alabama Health Care Auth., 583 So.2d 1342, 1343 (Ala.Civ.App.1990).
In contrast to the reading of Rule 410-2-5-.04(2)(a) provided in the main opinion, I believe the phrase "identified in the State Health Plan" must relate to both alternatives, i.e., both "a specific county, or part thereof," and "another specific planning region that is less than statewide." I do not think the doctrine of the last antecedent mandates a contrary result because, as our supreme court has repeatedly recognized, that doctrine should not be followed when "`a more remote antecedent is clearly required by a consideration of the entire act.'" White v. Knight, 424 So.2d 566, 567 (Ala.1982) (quoting 82 C.J.S. Statutes § 334 (1953)).
In Dobbs v. Shelby County Economic & Industrial Development Authority, 749 So.2d 425 (Ala.1999), county residents sought a judgment declaring that the directors of the county economic and industrial development authority were required to file statements of economic interests pursuant to § 36-25-14(a)(2), Ala.Code 1975, which requires
"[a]ny person appointed as a public official and any person employed as a public employee at the state, county, or municipal level of government or their instrumentalities who occupies a position whose base pay is fifty thousand dollars ($50,000) or more annually"
to file a statement. The court addressed the issue whether the qualifying phrase "whose base pay is fifty thousand dollars *593 ($50,000) or more annually" modified both "public official" and "public employee," or whether it modified only "public employee" because the term "public employee" was the last antecedent of the qualifying phrase. The court rejected the last-antecedent argument and held:
"`"Where several words are followed by a clause as much applicable to the first and other words as to the last, the clause should be read as applicable to all."' White v. Knight, 424 So.2d 566, 568 (Ala.1982) (quoting 82 C.J.S. Statutes § 334 (1953)). Thus, we conclude that the qualifying phrase  `whose base pay is fifty thousand dollars ($50,000) or more annually'  applies equally to appointed public officials as to public employees."
Dobbs, 749 So.2d at 432 (emphasis added).
In my judgment, the only logical reading of Rule 410-2-5-.04(2)(a) is: whenever any planning region that is smaller than the state as a whole has needs that have been identified in the SHP, then that planning region may be the subject of an adjustment that is not required to undergo administrative rulemaking. That reading of the definition of "adjustment" is reasonable and fair and accords with the purpose of the SHP. A true adjustment has already undergone, at the time it is proposed, the same legislative-type fact-finding and statistical analysis that characterizes notice-and-comment rulemaking because the subject addressed by the adjustment has been identified in the SHP, and that portion of the SHP is, itself, a rule. See Ex parte Traylor Nursing Home, Inc., 543 So.2d 1179, 1183 (Ala.1988).
In this case, however, the subject addressed by the proposed revision  that the planning region for acute-care beds should be a city rather than a county because the City of Madison is underserved and needs more acute-care hospital beds  had never undergone public scrutiny, notice and comment, statistical analysis, or legislative fact-finding. In fact, the only item that had undergone public scrutiny, notice and comment, statistical analysis, or legislative fact-finding was the fact that Madison County had a surplus of acute-care beds.
The City of Madison may well be an underserved area of Madison County, and it may, indeed, need more acute-care hospital beds, but its needs must be addressed via an amendment to the SHP and not by means of an adjustment "shortcut." The fact that the current SHP fails to identify the City of Madison as an underserved part of Madison County necessarily means that the revision that was made in this case is an amendment to the SHP, which was subject to the rulemaking requirements of the AAPA. The holding that this revision is an adjustment will undermine the integrity of the SHP by allowing any interested party, like the county commissioner who proposed the revision in this case, to override not only the authority of the SHCC but the interests of the public at large, which is entitled to participate in the notice-and-comment procedure for an amendment to the SHP.
I dissent because I cannot agree that the revision in this case was anything other than an amendment that was subject to the rulemaking requirements of the AAPA.
NOTES
[1] The adjustment merely indicated a need for 60 additional acute-care hospital beds in the City. In order for a "new institutional health service" to be acquired, constructed, or operated, SHPDA must issue a certificate of need. § 22-21-265(a), Ala.Code 1975. Institutional health services must be consistent with the State Health Plan. § 22-21-263(a), Ala.Code 1975.
[2] The trial court did not mention Crestwood Medical in its summary judgment. Although Crestwood Medical intervened as a defendant, it neither asserted a claim against the Authority nor had a claim asserted against it by the Authority. Because the summary judgment "conclusively determine[d] the issues before the court and ascertain[ed] and declare[d] the rights of the parties," it is a final, appealable judgment. Palughi v. Dow, 659 So.2d 112, 113 (Ala. 1995).
[3] Rule 410-2-4-.02(4), Ala. Admin. Code (SHPDA), provides, in pertinent part:

"(a) The [Council] may make adjustments to the needed beds determined by the methodology described above if evidence is introduced to the [Council] in each of the [following] criteria...:
"1. Evidence that residents of an area do not have access to necessary health services.... Problems which might affect access include ... the lack of health manpower in some counties....
"....
"3. Evidence that a plan adjustment would result in improvements in the quality of health care delivered to residents of an area.... Evidence of substandard care in existing hospital(s) within a county and/or evidence that additional hospital beds would enhance quality in a cost-effective way could partially justify a plan adjustment.
"(a) In applying these ... plan adjustment criteria, special consideration should be given to requests from hospitals which have experienced average hospital-wide occupancy rates in excess of 80% for the most recent two-year period.... [T]he 80% occupancy standard adds a market-based element of validity to other evidence, which might be given in support of a plan adjustment for an area.
"(b) .... In applying the ... plan adjustment criteria to specific services, consideration should be given to the adequacy of both numbers of beds and programs offered in meeting patient needs in a particular county."
(Emphasis added.)
[4] Rule 410-2-5-.04(3)(a), Ala. Admin. Code (SHPDA), provides that an "adjustment proposal will be submitted in accordance with the organizational outline."
[5] In Montgomery Rehab, this court also held that with regard to the plan adjustment at issue in that case, the process of adjusting the SHP was not a "contested case" within the meaning of the AAPA because it "did not determine the legal right, duty, or privilege of any party." Montgomery Rehab., 610 So.2d at 407. Therefore, the court concluded that Montgomery Rehab was not "entitled to the procedural requirements afforded to participants in contested cases" under the AAPA with regard to the adjustment process. Montgomery Rehab., 610 So.2d at 407.

However, as mentioned earlier in this writing, in Alabama Department of Environmental Management v. Coosa River Basin Initiative, Inc., supra, our supreme court addressed the issue whether the trial court had jurisdiction to consider claims concerning an agency action when the action does not constitute a "rule" under the AAPA. In that case, the Alabama Department of Environmental Management issued a hazardous-waste-facility permit allowing the destruction of certain chemical weapons, and certain groups challenged the portion of that permit that included a recommended "cancer-risk screening level of 1 × 10 -5." Alabama Dep't of Envtl. Mgmt. v. Coosa River Basin Initiative, Inc., 826 So.2d at 113. With regard to one group, CRBI, the trial court determined that the inclusion of the cancer-risk screening level was a "rule" under the AAPA, and, because the AAPA rulemaking procedures had not been followed, it entered a summary judgment in favor of CRBI. Our supreme court reversed, citing this court's opinion in a related appeal, Families Concerned About Nerve Gas Incineration v. Alabama Department of Environmental Management, 826 So.2d 857 (Ala.Civ.App. 2002). Based on the analysis in that case, the supreme court reversed the trial court's determination that the inclusion of the cancer-risk screening level in the permit constituted a "rule" under the AAPA to which formal rulemaking procedures would apply.
The supreme court also considered whether CRBI could prosecute its action challenging the inclusion of the cancer-risk screening level in the permit given that it did not constitute a "rule" under the AAPA. Alabama Dep't of Envtl. Mgmt. v. Coosa River Basin Initiative, Inc., supra. The court concluded that the trial court properly exercised jurisdiction under the AAPA and under the Declaratory Judgment Act and noted that a contrary conclusion would leave CRBI without an adequate remedy. Alabama Dep't of Envtl. Mgmt. v. Coosa River Basin Initiative, Inc., 826 So.2d at 117-18.
[6] The Authority has argued that Montgomery Rehab focused on the geographic restriction of the plan adjustment in that case in determining whether the revision to the SHP at issue was generally applicable. In his special writing, Judge Bryan expresses concern that the concept of general applicability should not reference "geographic scope" and that he might be inclined, if the issue is presented to the court, to overrule Montgomery Rehab insofar as it references that geographic scope. ___ So.2d at ___. However, in reference to a different argument, geographic references in the Administrative Code, particularly Rules 410-2-4-.02, which discusses planning areas as referring to counties, and 410-2-5-.04(2)(a), which allows adjustments to counties, "or part[s] thereof," are cited in the main opinion and in this special writing. I read Montgomery Rehab as recognizing the concept of general applicability both in terms of the geographic scope set forth in Rule 410-2-5-.04(2)(a) and in the concept of the group of entities or people to whom the revision applies. See Montgomery Rehab., 610 So.2d at 407 ("Thus, the adjustment is limited in geographic scope and is not applicable to all potential and existing rehabilitation service providers statewide."). However, because the Authority did not assert before the trial court that the revision to the SHP at issue in this case was generally applicable, this is not an appropriate case in which to set forth a detailed analysis of the concept of general applicability in this context.
[7] The record does not indicate whether the referenced plan adjustments for Bullock and Jackson counties' acute-care-bed-needs calculation was a result of a combined proceeding or of separate proceedings.